**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CORY M. ZANGER,

        Plaintiff,               Case Number: 05-CV-72300-DT

v.                                         JUDGE PAUL D. BORMAN
                                              UNITED STATES DISTRICT COURT

GULF STREAM COACH, INC.,
a Foreign Corporation, and
GENERAL R.V. CENTER, INC.,
a Michigan Corporation,
GENERAL MOTORS CORPORATION,
a Delaware Corporation, Jointly and Severally,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT GENERAL MOTOR'S MOTION FOR DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(6)**

      Now before the Court is Defendant General Motors" ("GM") Motion for Dismissal. The Court held a hearing on September 21, 2005. Having considered the entire record, and for the reasons that follow, the Court GRANTS in part and DENIES in part the instant motion.

**I.    FACTS**

      In this action, Plaintiff Cory Zanger ("Plaintiff") brought suit on July 6, 2005 against Gulf Stream Coach, Inc. ("Gulf Stream"), General R.V. Center, Inc. ("General R.V.") and General Motors Corporation ("GM") (collectively "Defendants") based on breach of express warranty, breach of implied warranties, violation of the Federal Magnuson-Moss Warranty Act ("MMWA"), violation of the Michigan Consumer Protection Act ("MCPA") demand for revocation, and negligent repair.

On August 10, 2004, GM filed the present motion to dismiss, arguing that Plaintiff failed to state a claim for which relief can be granted on each of the following seven (7) counts:

  Count I:   Breach of Warranty of Merchantability
  Count 2:   Violation of the Magnuson-Moss Warranty Act
  Count 3:   Breach of Warranty of Fitness
  Count 4:   Revocation
  Count 5:   Violation of the Michigan Consumer Protection Act
  Count 6:   Negligent Repair
  Count 7:   Breach of Express Warranty

(Complaint, ¶¶18-68). Plaintiff filed his response on May 24, 2005.

This controversy revolves around Cory Zanger's purchase of a new 2004 Gulf Stream Endura recreational vehicle ("vehicle") from General RV. (Complaint, ¶5). GM manufactured the chassis of the vehicle, while Gulf Stream manufactured the coach and final assembly. (Def.'s Mot., 1). Plaintiff received GM's repair or replacement warranty in conjunction with the purchase. (*Id.*) The relevant part of the warranty provided:

> GM does not authorize any person to create for it any other obligation or liability in connection with these vehicles. **Any implied warranty of merchantability or fitness for a particular purpose applicable to this vehicle is limited in duration to the duration of this written warranty. Performance of repairs and needed adjustments is the exclusive remedy under the written warranty or any implied warranty.**
> **GM shall not be liable for incidental or consequential damages (such as, but not limited to, lost wages or vehicle rental expenses) resulting from breach of this written warranty or any implied warranty.**

(Def.'s Mot., Ex. 1) (emphasis in original)

After taking possession of the vehicle, Plaintiff experienced various problems with both the chassis and coach of the vehicle, (Pl. Resp., 1), and subsequently took the vehicle in for repairs. (Complaint, ¶11). The vehicle was unavailable to Plaintiff for a period up to 180 days. (*Id.*).

2

Plaintiff contends that Defendants were offered numerous attempts to cure these defects, but failed to do so. (*Id*. at ¶14). Plaintiff was not satisfied with the repairs that were made and notified Defendants that he desired to have them buy-back the vehicle. (*Id*. at ¶12-15). Defendants refused to buy-back the vehicle, resulting in this suit.

Plaintiff makes four principal arguments in opposition to GM's Motion to Dismiss. First, the warranty offered by GM failed its essential purpose because GM did not repair Plaintiff's vehicle within a reasonable time. Second, privity is not required in actions for breach of implied warranty. Third, because he has a viable claims that GM breached its express and implied warranties, there is a cause of action for a violation of the MMWA. Finally, Plaintiff argues that as a result of stating valid claims for breach of implied warranties against GM, he has stated a valid claim under the MCPA.

GM makes seven principal arguments supporting its Motion to Dismiss: (1) the breach of express warranty claim should be dismissed because the GM warranty was not an express warranty under the Michigan UCC, but a limited warranty (Def.'s Mot., 2); (2) it has not breached its implied warranty of merchantability or fitness because Michigan law requires privity of contract for that claim to be valid (*Id*.); (3) Plaintiff failed to state a claim for a violation of the MMWA because GM's warranty was a "limited warranty," not an "express warranty," no privity existed between Plaintiff and GM (*Id*. at 3); (4) that the claim requesting a replacement vehicle or a refund fails to state a claim upon which relief can be granted because the written warranty was limited and only applied to the vehicle's chassis (*Id*.); (5) Plaintiff cannot revoke acceptance because GM was not a seller of the vehicle (*Id*. at 8); (6) Plaintiff's MCPA claim fails because it is premised on breach of an implied warranty and Plaintiff failed to state a claim for a breach of implied warranty (*Id*. at

3

9-11); and (7) Plaintiff's negligent repair claim is a restatement of the breach of warranty claims (*Id*. at 11).

## II.     ANALYSIS

### A.  Standard

A complaint brought under Federal Rule of Civil Procedure 12(b)(6) should not be dismissed for failure to state a claim, "unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Hoover v. Ronwin*, 456 U.S. 558, 587, 104 S. Ct. 1989; 80 L. Ed. 2d 590 (1984). For purposes of a motion to dismiss, the pleadings and affidavits are viewed "in a light most favorable to the Plaintiff." *Niemi v. NHK Spring Co.*, 276 F. Supp. 2d 717 (E.D. Mich. 2003).  All factual allegations and any inferences derived from those allegations must be accepted as true. *Cheriee Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994).

### B. Discussion

#### 1. Breach of Express Warranty (Count VII)

"Express warranty" is defined in M.C.L. § 440.2313 of the Uniform Commercial Code as follows:

> (1)     Express warranties by the seller are created as follows:
> (a)     An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the good shall conform to the affirmation or promise
> (b)     A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> (c)     A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or mode.

M.C.L. § 440.2313(1).

GM contends that the warranty accompanying the chassis was a "limited warranty" and not

an "express warranty" as claimed by Plaintiff. GM argues that the warranty is not an "express warranty" because it is limited to repairing, replacing and adjusting defects if and when the chassis malfunctions during the warranty period. As a result of the limitations of the warranty, GM asserts that the warranty does not fall into the area covered by M.C.L. § 440.2313.

Plaintiff makes two arguments. Plaintiff argues that GM breached its express warranty because the problems that were repaired under the warranty still exist. Additionally, Plaintiff argues that the warranty failed its essential purpose because the vehicle's aggregate repairs were not completed in a reasonable time and, as a result, the benefit of the bargain regarding the warranty was lost. Plaintiff relies on *Computer Networks v. AM General Corp*, 265 Mich. App. 309 (2005) and *Kelynack v. Yamaha Motor Corp.*, 152 Mich. App. 105 (1986).

In *Computer Networks*, the court held that "where a limited express warranty fails of its essential purpose or deprives either party of the value of the bargain, the parties may pursue other remedies under the Uniform Commercial Code ("UCC")." *Computer Networks*, 265 Mich. App. at 314. The court ruled that the manufacturer has a reasonable, limited time to replace parts or make repairs. *Id*. (citing *Kelynack.*, 152 Mich. 112). To find unreasonableness, the court stated that one must look to the time it took to make each individual repair. *Id*.

In the instant case, the Court concludes that Plaintiff's reliance on *Computer Networks* and *Kelynack* is misplaced. Contrary to Plaintiff's argument, those cases stand for the proposition that the unreasonableness of repair or replacement of parts is measured by whether the time to perform the numerous, individual repairs is unreasonable, not the aggregate time a vehicle is being repaired. Plaintiff did not argue that any of the defects individually were repaired in an unreasonable amount of time. Plaintiff only argued that repairs took 180 days and having a vehicle unavailable for such

a substantial amount of days was unreasonable.

Further, Plaintiff mistakenly relies on *Computer Networks* to argue that GM breached its express warranty because the problems still existed after repairs were performed. In *Computer Networks*, the court accepted that the warranty was an "express warranty" before they began their analysis.[1] Unlike in *Computer Networks*, where the court specifically called the warranty an express warranty, this Court has been asked to decided the question of whether the warranty is an "express warranty."

In *Gernhardt v. Winnebago Industries*, this Court held that limiting a warranty to a specified period of time for repair and replacement of defects "does not fit within the parameters of M.C.L. § 440.2313." *Gernhardt*, 2003 WL 23976324, *8-*9 (E.D. Mich) (unpublished) (hereinafter "*Gernhardt I*"). A limited warranty does not meet the definition of an express warranty because by providing a sole exclusive remedy,[2] a limited warranty "does not constitute an affirmation of fact or promise to which the [vehicle] had to conform, a description of the vehicle, or a sample or model of the [vehicle]." *Gernhardt I*, 2003 WL 23976324 at *8 (citing *Rokicsak v. Colony Marine Sales and Services, Inc.*, 219 F. Supp.2d 810, 816 (E.D. Mich. 2002) (examined in light of M.C.L. § 440.2313)). In the instant case, as in *Gernhardt I*, GM's warranty is effective for a limited time and only covers repair and replacement of defective parts. Consequently, the Court grants GM's Motion to Dismiss with respect to Plaintiff's breach of express warranty claim.

**2**. **Breach of Implied Warranty of Merchantability and Fitness** (Counts I & III)

---

[1] "AM General offered an *express warranty*." *Computer Networks*, 696 N.W.2d at 54 (emphasis added).

[2] In this case, the sole exclusive remedy is repair and replacement of defects.

The Michigan UCC describes the implied warranty of merchantability:

(1) Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind

M.C.L. § 440.2314(1).

GM seeks dismissal of Plaintiff's breach of implied warranty claims arguing that it is not a "seller" under M.C.L. 440.2314(1) because it is not an immediate seller and lacks privity with Plaintiff. GM supports their argument by stating that there is no contract for the sale of the vehicle between Plaintiff and GM. Additionally, GM states that it did not sell the vehicle to Plaintiff. GM further argues that Plaintiff's complaint establishes the absence of privity when he stated that the vehicle was purchased from General R.V. Plaintiff rebuts by arguing that privity is no longer required in Michigan in an implied warranty claim against a remote manufacturer.

There is a split in the interpretation of Michigan law on the issue of the privity requirement for a remote manufacturer. *See Mt. Holly Ski Area v. U.S. Electric Motors*, 666 F. Supp. 115 (E.D. Mich 1987) ("In order for a plaintiff to recover economic losses on a breach of implied warranty theory under Michigan law, privity of contract must exist between plaintiff and the defendant."); *Chiasson v. Winnebago Indus.*, 2002 WL 32828652 (E.D. Mich. May 16, 2002) (holding contractual privity is necessary under Michigan law in order for a consumer to bring an implied warranty claim against a remote manufacturer); *Pidcock v. Ewing*, 371 F. Supp. 2d 870 (E.D. Mich 2005) (holding privity was required by a consumer purchaser to succeed on an implied warranty claim); *Michels v. Monaco Coach Corp*, 298 F. Supp.2d 642 (E.D. Mich. 2003) (holding that Michigan law does not require privity in order for a plaintiff to recover on a breach of implied warranty theory); *Jellison v. Feetwood Enterprises*, Case No. 03-CV-71502 (E.D. Mich. Apr. 7, 2004) (same).

7

This Court finds the *Michels* line of reasoning persuasive, and thus holds that privity is not required in an implied warranty claim against a remote manufacturer.

In *Michels*, United States District Court Judge Duggan surveyed Michigan law and concluded that privity is no longer required in Michigan when pursuing a breach of implied warranty claim against a remote manufacturer. The court reasoned that many of the cases which previously held that privity was necessary to prevail on an implied warranty claim were unpersuasive. The court looked at the split in the Michigan Court of Appeals decisions in *Cova v. Harley Davidson Motor Co*, 26 Mich. App. 602, 608-09 (1971) ("[A] consumer may recover from a manufacturer for breach of implied warranty without proving negligence and without regard to privity even in a case where the product is inherently dangerous and no personal injuries have been suffered.") and *Auto Owner's Insurance Co. v. Chrysler Corp.*, 129 Mich. App. 38 (1983) (holding privity is required between a consumer plaintiff and a remote manufacturer to succeed on an implied warranty claim, an express warranty is not enough). *Michels* noted that *Auto Owners* was inconsistent with Michigan Supreme Court precedent.[3] *Michels*, 298 F. Supp.2d at 649. Subsequent Michigan Court of Appeals cases have declined to follow *Auto Owners* as well. *See Sullivan v. Double Seal Glass Co.*, 193 Mich. App. 333, 342-43 (1991); *Great American Ins. Co. v. Paty's Inc.*, 154 Mich. App 634, 642 (1986). *See also Frankenmuth Mut. Ins. Co. v. Ace Hardware Corp.*, 899 F. Supp. 348, 353 (W.D. Mich. 1995).

GM also argues that this Court in *Gernhardt I*, 2003 WL 23976324, held that contractual privity is necessary under Michigan law in order for a consumer to bring an implied warranty claim

---

[3]"The court did not address the language in *Spencer* which, at the very least, suggested that the Michigan Supreme Court was abolishing privity altogether." *Michels*, 298 F. Supp.2d at 649.

against a remote manufacturer. While this Court takes note of the *Gernhardt I* decision, it concludes that subsequent case law warrants a change of opinion. Therefore, the Court finds that the *Michels* decision, based on Michigan case law and handed down subsequent to *Gernhardt I*, correctly determined that "vertical privity no longer is required in Michigan to pursue a breach of implied warranty claim against a remote manufacturer." *Michels*, 298 F. Supp.2d at 650.[4] Because Plaintiff does not need privity to bring a claim of breach of implied warranty of merchantability, Plaintiff's claim survives.

The breach of implied warranty of fitness claim[5] was not referred to in either GM's Motion to Dismiss or Plaintiff's Response. However, as with the implied warranty of merchantability and for the same reasons, privity of contract is not required for a consumer to recover on an implied warranty of fitness claim. Because Plaintiff does not need privity to bring a claim of breach of implied warranty of fitness, Plaintiff's claim also survives. Accordingly, the Court denies GM's Motion to Dismiss on both breach of implied warranty claims.

### 3. **Revocation** (Count IV)

On the issue of revocation, Michigan's UCC states:

---

[4] Indeed, in a second *Gernhardt* decision, *Gernhardt v. Winnebago*, No. 03-CV-73917-DT, Docket. No. 38 (E.D. Mich. October 12, 2005) (order granting in part and denying in part defendant's motion for summary judgment) (hereinafter "*Gernhardt II*"), this Court reconsidered and amended its decision in *Gernhardt I*, holding that privity is no longer required.

[5] The UCC describes the implied warranty of fitness:
Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.
M.C.L. § 440.2315.

9

>   (1)   The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
>       (a)   on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
>       (b)   without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>   (2)   Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
>   (3)   A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

M.C.L. § 440.2608.

GM argues that Plaintiff cannot revoke acceptance against a non-seller of a vehicle and therefore Plaintiff cannot revoke against GM. Plaintiff concedes that he does not have a revocation claim against Plaintiff. Therefore, the Court grants GM's Motion to Dismiss on Plaintiff's claim of revocation of acceptance.

### 4.   Violation of the Federal Magnuson-Moss Warranty Act (Count II)

Plaintiff's MMWA claim is actually two separate claims. The first is a claim for refund or replacement under section 2304(a) of the Act. The second is for breach of implied warranty under the Act.

####   a.   Section 2304(a)

GM argues that section 2304(a) of the Act only applies to "full" warranties and since the warranty at issue is a "limited" one, the Act is not applicable. GM cites authority from other jurisdictions. Plaintiff restates its earlier argument that the warranty is a viable express warranty and thus he has a claim under the Act. Plaintiff cites no authority in support of his position.

"The MMWA allows a consumer 'who is damaged by the failure of a supplied, warrantor,

or service contractor to comply with any obligation [under the Act], or under a written warranty, implied warranty, or service contact' to file in any state or federal district court a suit for damages and other legal and equitable relief." *Michels*, 298 F. Supp.2d at 650 (citing 15 U.S.C. § 2310(d)(1)). The Act provides a private right of action by a consumer against a manufacturer who does not comply with its written or implied warranty. 15 U.S.C. 2310. "Only to the extent that Magnuson-Moss is applicable to the sale of consumer goods does it supercede inconsistent provisions of the UCC." *Source v. Naperville Jeep Eagle*, 722 N.E.2d 227, 234 (Ill. App. 1999) (citing *Murphy v. Mallard Coach Co.*, 179 A.D.2d 187 (NY 1992)). If the written warranty does not meet the requirements of the MMWA, then it must meet the requirements of the UCC. *Source*, 722 N.E.2d at 234. The MMWA breaks down express warranties into two categories: "full" and "limited." 15 U.S.C. § 2303(a). To be classified as "full," a warranty must meet the minimum standards of a "full warranty" under the Act. *See infra*; 15 U.S.C. 2303(a). If the warranty does not meet the standards of a "full warranty," then the warranty, for purposes of the Act, is a "limited warranty." 15 U.S.C. 2303(a). The minimum standards for a "full warranty" are:

> (a) Remedies under written warranty; duration of implied warranty; exclusion or limitation on consequential damages for breach of written or implied warranty; election of refund or replacement. In order for a warrantor warranting a consumer product by means of a written warranty to meet the Federal minimum standards for warranty--
> (1) such warrantor must as a minimum remedy such consumer product within a reasonable time and without charge, in the case of a defect, malfunction, or failure to conform with such written warranty;
> (2) notwithstanding section 108(b) [15 USCS 2308(b)], such warrantor **may not impose any limitation on the duration of any implied warranty on the product**;
> (3) such warrantor may not exclude or limit consequential damages for breach of any written or implied warranty on such product, unless such exclusion or limitation conspicuously appears on the face of the warranty; and
> (4) if the product (or component part thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit

> the consumer to elect either a refund for, or replacement without charge of, such product or part (as the case may be).

15 U.S.C. 2304(a) (emphasis added).

In the instant case, the GM warranty does not meet the minimum standard because it limits the duration of the implied warranty for the vehicle's chassis. Therefore, the MMWA does not cover the warranty. Since the MMWA does not apply, the Court next looks to the UCC definition of express warranty. As mentioned above, the limited warranty in the instant case does not meet the UCC definition of an express warranty. Accordingly, the Court grants GM's Motion to Dismiss Plaintiff's MMWA section 2304 claim.

*b. Implied Warranty*

GM argues that because Plaintiff has failed to state a claim for a breach of the implied warranties of merchantability and fitness, he also has failed to state a claim for breach of implied warranties under the MMWA.

Section 2301(7) of the Act defines an implied warranty as "an implied warranty arising under State law . . . ." Because the Court found that vertical privity is no longer required under Michigan law to pursue a breach of implied warranty claim, the Court denies GM's Motion to Dismiss Plaintiff's MMWA claim based on a breach of implied warranties.

**5.     Violation of the Michigan Consumer Protection Act** (Count V)

GM argues that Plaintiff does not allege any facts which describe specifically how GM violated the statute. GM contends that Plaintiff only repeats the statutory languages of the MCPA. Therefore, GM argues that Plaintiff failed to state facts constituting fraud. In the alternative, GM states that a close look at Plaintiff's MCPA claims shows that it is based on a breach of implied warranties. GM argues that Plaintiff's MCPA claim should be dismissed because there are no

implied warranties running between Plaintiff and GM. Plaintiff responds only by restating three (3) of the nine (9) specific alleged violations of the MCPA originally alleged in their complaint. Specifically, Plaintiff re-alleges that GM violated the MCPA by (1) "represent[ing] the vehicle to be of good, merchantable quality, free from defects, which in fact it was not," (2) "[f]ailing to make proper repairs on a warranted item," and (3) "[f]ailing to reveal material facts, including (but not limited to) the cause of the vehicle defects and non-conformities." (Pl. Resp., 7).

The majority of Plaintiff's MCPA claims involve charges of fraud. *Parsley v. Monaco Coach Corp*, 327 F. Supp.2d 797, 807 (W.D. Mich. 2004). "It is proper to construe the provision of the MCPA 'with reference to the common-law tort of fraud.'" *Zine v. Chrysler Corp*., 236 Mich. App. 261, 283 (1999). In the instant case, Plaintiff concedes that he is not alleging fraud under the MCPA, therefore GM's Motion to Dismiss is granted for any fraud claims under the MCPA.

In addition to fraud, a breach of implied warranties also violates the MCPA. *Mikos v. Chrysler Corp*, 158 Mich. App. 781 (1987). As stated above, Plaintiff can pursue a breach of implied warranties claim because privity is not required. Accordingly, GM's Motion to Dismiss the MCPA claim is denied to the extent the MCPA claim involves a breach of an implied warranty.

**6.     Negligent Repair** (Count VI)

GM argues that Plaintiff has only suffered economic injury and that under Michigan law, the economic law doctrine bars tort claims which sound in contract. GM further argues that Plaintiff's negligent repair claim is only a restatement of his breach of warranties claims. Plaintiff concedes that he does not have a negligent repair claim against GM. As a result, the Court grants GM's Motion to Dismiss Plaintiff's negligent repair claim.

**III. CONCLUSION**

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART GM's Motion to Dismiss. Counts IV, VI and VII of the Complaint are dismissed in their entirety. Additionally, Count II, to the extent that it is based on a breach of express warranty, and Count V, to the extent that it is based on fraud, are also dismissed. Plaintiff's breach of implied warranty of merchantability and fitness claims (Counts I and III) and remaining claims under the MMWA and the MCPA survive.

SO ORDERED

        s/Paul D. Borman
        PAUL D. BORMAN
        UNITED STATES DISTRICT JUDGE

Dated: October 25, 2005

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on October 25, 2005.

        s/Jonie Parker
        Case Manager