UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORY M. ZANGER,

       Plaintiff,         CASE NO.  05-72300

v.               PAUL D. BORMAN
                 UNITED STATES DISTRICT JUDGE

GULF STREAM COACH, INC.,
a Foreign Corporation, and
GENERAL R.V. CENTER, INC.,
a Michigan Corporation,
GENERAL MOTORS CORPORATION,
a Delaware Corporation, Jointly and Severally,

       Defendants.
_____ /

**OPINION AND ORDER DENYING DEFENDANT GENERAL R.V.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6), AND DENYING GENERAL R.V.'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

**I. BACKGROUND**

  The instant action was brought by Plaintiff Cory Zanger ("Plaintiff") on July 6, 2005 against Gulf Stream Coach, Inc. ("Gulf Stream"), General R.V. Center, Inc.,("General RV"), and General Motors Corporation ("GM") (collectively "Defendants") based on the alleged breaches of warranty, contract and violations of state and federal statutes.

  On August 10, 2004, GM filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff failed to state a claim for which relief can be granted on each of seven (7) counts in Plaintiff's Complaint.[1]  In its Opinion and Order of October 24, 2005, the

---

[1] Count I:  Breach of Warranty of Merchantability
  Count II:  Violation of the Magnuson-Moss Warranty Act
  Count III: Breach of Warranty of Fitness

1

Court dismissed Counts IV, VI and VII of the Complaint in their entirety, as applied to GM. Additionally, Count II was dismissed to the extent that it was based on a breach of express warranty, and Count V was dismissed to the extent it was based on fraud. However, Counts I and III survived, as well as the remaining claims under Counts II and V.

On September 21, 2005, General RV filed the present Motion to Dismiss and Motion for Summary Judgment arguing failure to state a claim and failure to show the existence of a genuine issue as to any material fact for each of the counts. Plaintiff filed his response on October 10, 2005. General RV filed its reply on October 25, 2005.

This controversy revolves around Cory Zanger's purchase of a new 2004 Gulf Stream Endura recreational vehicle ("motor home") from General RV. GM manufactured the chassis of the motor home while Gulf Stream manufactured the coach and made the final assembly. Plaintiff signed General RV's Sales Agreement ("Sales Agreement") on June 17, 2004. The relevant part of the Sales Agreement provided:

> FACTORY WARRANTY:
> Unless a separate written document containing the terms of a Dealer warranty is furnished by the Dealer to the Purchaser, any warranty new vehicle, motor home or recreational vehicle is provided only by the Manufacturer thereof. THE DEALER HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

(Def.'s Br., Ex. A) (emphasis in original). Plaintiff financed part of the purchase of the motor

---

Count IV: Revocation
Count V: Violation of the Michigan Consumer Protection Act
Count VI: Negligent Repair
Count VII: Breach of Express Warranty
(Compl. ¶¶ 18-68).

home. The financing arrangement is reflected in a Motor Vehicle Purchase Agreement ("MVPA"). Plaintiff financed the motor home though General RV which immediately assigned its interest to Fifth Third Bank. The MVPA was executed on June 24, 2004.

After taking possession of the motor home, Plaintiff experienced various problems with both the chassis and coach of the vehicle. Plaintiff subsequently took the vehicle in for repairs. Plaintiff's vehicle was unavailable to Plaintiff for a non-consecutive period of 180 days. Plaintiff contends that Defendants were offered numerous attempts to cure these defects, but failed to do so. Plaintiff was not satisfied with the repairs that were made and notified Defendants that he desired to have them buy back the vehicle. Defendants refused to buy back the vehicle, resulting in this suit.

General RV moves to dismiss Plaintiff's Complaint for failure of Plaintiff to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). General RV also moves for Summary Judgment under Federal Rule of Civil Procedure 56. General RV makes five (5) arguments: (1) the breach of express and implied warranty claims should be dismissed because General RV properly and legally disclaimed all expressed and implied warranties in its Sales Agreement; (2) General RV's Sales Agreement disclaimed all express and implied warranties, therefore, there was no violation of the Magnuson-Moss Warranty Act ("MMWA"); (3) revocation of acceptance is solely a remedy for breach of warranty and cannot be asserted when express or implied warranties are disclaimed; (4) Plaintiff's Michigan Consumers Protection Act ("MCPA") claim fails because it is premised on breach of express or implied warranty and General RV's disclaimed all express and implied warranties; (5) Plaintiff's negligent repair claim is a restatement of his breach of warranty claims.

3

Plaintiff argues that Defendant's Motion to Dismiss and Motion for Summary Judgment must be denied.  First, Plaintiff argues General RV did not properly disclaim all express and implied warranties because the actual purchase agreement did not disclaim any warranties.  Second, Plaintiff states that because he has a viable cause of action for breach of express and implied warranties, there is also a cause of action for a violation of the MMWA.   Third, Plaintiff argues that he stated a valid claim for breach of implied warranties against General RV and therefore stated a valid claim under the MCPA.  Fourth, Plaintiff contends that he is entitled to revoke acceptance of the defective motor home under Mich. Comp. Law section 440.2608.  Plaintiff concedes that General RV is not liable on the negligent repair claims.

## II.     ANALYSIS

### A.     Standard of Review

A complaint brought under Federal Rule of Civil Procedure 12(b)(6) should not be dismissed for failure to state a claim, "unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief."  *Hoover v. Ronwin*, 456 U.S. 558, 587, 104 S. Ct. 1989; 80 L. Ed. 2d 590 (1984). For purposes of a motion to dismiss, the pleadings and affidavits are viewed "in a light most favorable to the Plaintiff."  *Niemi v. NHK Spring Co.*, 276 F. Supp. 2d 717 (E.D. Mich. 2003).  All factual allegations and any inferences derived from those allegations must be accepted as true.  *Cheriee Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994).  "If, on a [motion to dismiss] . . . , matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgement and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to represent all material made pertinent to

such a motion by Rule 56." FED. R. CIV. P 12(b).

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-

1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "'[C]onclusory' allegations unsupported by 'specific' evidence will be insufficient to establish a genuine issue of fact." *Id.* (citations omitted). *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990).

"[T]he showing (whether as to standing or the merits) required to overcome a motion for summary judgment is more extensive than that required in the context of a motion to dismiss." *Id*. "The principal difference is that in the former context evidence is required, while in the latter setting the litigant may rest upon the allegations of his complaint." *Id.* (citations omitted); *see* FED. R. CIV. P. 56(e) (requiring the "nonmoving party to go beyond the pleadings."). Because Defendant relies upon evidence not included in the pleadings, the Court treats Defendant's motion as a motion for summary judgment.

**B.    Discussion**

### 1. **Breach of Express and Implied Warranties** (Counts I, III, VII)

General RV seeks dismissal of Plaintiff's breach of express and implied warranty claims arguing that the Sales Agreement disclaimed all express and implied warranties as to the motor home. General RV further argues that the disclaimer was done both conspicuously and in writing.

Plaintiff responds by arguing that the Sales Agreement is not actually the superceding agreement. Plaintiff asserts that the MVPA is the purchase agreement executed by General RV and Plaintiff. Plaintiff also argues that since the Sales Agreement is not the purchase agreement, it is not binding.

Defendant replies that the MVPA is solely a financing agreement and that the Sales Agreement is executed and utilized in every sale.

Michigan Compiled Law section 440.2316(2) provides:

> Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'

"There is no dispute that a seller may disclaim implied warranties under Michigan law as long as the disclaimer is conspicuous." *Parsley v. Monaco Coach Co.*, 327 F. Supp. 2d 797, 800 (E.D. Mich. 2004) (citing M.C.L. § 440.2316(2)); *Mich. Dessert Corp., v. A.E. Staley Mfg. Co.*, 23 Fed. Appx. 330 (6th Cir. 2001) (unpublished). A term or clause is conspicuous under Michigan Complied Law section 440.1201(10) "when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or

color. . . ." The court determines whether or not a term or clause is conspicuous. (*Id*.).

In the instant case, the court must first decide whether General RV's Sales Agreement or the MVPA controls. In claiming that the MVPA controls, Plaintiff points to the language in the Sales Agreement, which states in part:

> THIS AGREEMENT IS NOT BINDING UPON EITHER THE PURCHASER OR THE DEALER UNTIL SIGNED BY BOTH PARTIES, OR SHALL NOT BE BINDING UPON THE DEALER OR THE PURCHASER UNTIL ALL CREDIT TERMS, IF APPLICABLE, ARE APPROVED AND ACCEPTED BY ALL PARTIES-DEALER, PURCHASER AND LEADING INSTITUTION. IF CREDIT TERMS ARE NOT ACCEPTED, FULL DEPOSIT WILL BE REFUNDED TO PURCHASER.

(Def.'s Br., Ex. A). Plaintiff argues that the credit terms were only agreed to in the MVPA and because the Sales Agreement refers to the credit terms, the Sales Agreement was not intended to be a binding agreement containing all the terms of the purchase.

In *Pidcock v. Ewing*, 371 F. Supp.2d 870 (E.D. Mich. 2005), the court dealt with the same issue. The plaintiff argued in *Pidcock* that the retail installment sales contract, not the purchase agreement, was the operative document based on the doctrine of merger. *Id.* at 880. The court found that the argument lacked merit because both the retail installment sale contract and the purchase agreement were part of the transaction. *Id*. The court stated that the purchase agreement did not disappear when the parties signed the financing agreement and therefore held the purchase agreement to be the operative document. *Id*. The court ruled that "[plaintiffs] are not suing to enforce the terms of the [retail installment sale contract], i.e., their dispute is not about the financing of the motor home but rather the condition of the motor home." *Id*.

Likewise, the MVPA in the instant case is a financing agreement. The MVPA states the financing amount, the finance charge and the annual percentage rate. Though the MVPA states

that "No provision of this agreement may be amended, modified, or waived except by a written agreement signed by us," (Pl.'s Resp. Ex. 3), that clause refers to a change in the financing agreement. No language in the MVPA convinces the Court that it replaces the Sales Agreement. Further, General RV uses the Sales Agreement in every sale of a motor home. The MVPA is only used when the buyer is financing the purchase. The agreements at issue are separate, distinct agreements and both are binding on the parties who signed them. Plaintiff is suing regarding the conditions of the motor home and not regarding the financing of the motor home. Plaintiff is challenging General RV's performance of the warranties in the purchase agreement. The fact that the warranty disclaimers are on a different document than the MVPA is irrelevant.

Because the Sales Agreement covers the transaction between General RV and Plaintiff, the Court next looks to whether express and implied warranties were properly disclaimed. First, the language of the disclaimer must mention merchantability and be in writing. M.C.L. § 440.2316(2). The front side of the Sales Agreement states: "I HAVE READ THE TERMS ON THE BACK AND HAVE RECEIVED A COMPLETED COPY OF THIS AGREEMENT (SEE REVERSE FOR ADDITIONAL TERMS AND CONDITION)."  (Def.'s Br. Ex. A) (emphasis in original). Paragraph 12, on the back of the Sales Agreement, states:

> FACTORY WARRANTY:
>     Unless a separate written document containing the terms of a Dealer warranty is furnished by the Dealer to the Purchaser, any warranty new vehicle, motor home or recreational vehicle is provided only by the Manufacturer thereof. THE DEALER HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

(Def.'s Br., Ex. A) (emphasis in original). After reviewing the above language, the Court finds that General RV's written Sales Agreement contains the necessary language to exclude all

express and implied warranties under Mich. Comp. Law section 440.2316.

Next, the Court must determine whether the disclaimer of express and implied warranties was conspicuous. *See* M.C.L. § 440.1201(10) and M.C.L. § 440.2316(2). In this case, the notice to Plaintiff of the limitations were written in all capital letters on the front of the Sales Agreement, just above where Plaintiff placed his signature. On the back of the Sales Agreement, the paragraph where General RV disclaimed all express or implied warranties is also in capital letters. However, "FACTORY WARRANTY" is the title of Paragraph 12, where the warranties were allegedly disclaimed. The title "FACTORY WARRANTY" gives the reader the impression that the paragraph covers the factory's warranties, not the dealership's warranties. General RV argues that the paragraph refers to the "dealer" in the body of the text, even though the title of the paragraph states "FACTORY WARRANTY." It is General RV's contention that a reasonable person reading the paragraph would understand that Paragraph 12 disclaims all warranties by General RV, the "dealer." The Court disagrees. Indeed, the Court notes that in a subsequent revised version of General RV's purchase agreement, Paragraph 12 has been titled "EXCLUSION OF WARRANTIES," not "FACTORY WARRANTY" as in the version applicable to the instant case. (*See* Def. Reply Ex. D). "EXCLUSION OF WARRANTIES" is clear and conspicuous in informing the reader of the paragraph's contents; "FACTORY WARRANTY" is not. Though a reasonable person reading the Sales Agreement would notice Paragraph 12, they would not necessarily understand that this section disclaims the dealership's warranties. Therefore, the Court finds that General RV's disclaimer is not conspicuous under Michigan Compiled Law sections 440.1201(10) and 440.2316(2). Accordingly, Paragraph 12 does not disclaim all express and implied warranties.

The Court must now look to Plaintiff's express and implied warranty claims individually.

### a. Express Warranties

"Express warranty" is defined in Mich. Comp. Law section 440.2313 of the Uniform Commercial Code as follows:

(1) Express warranties by the seller are created as follows:

  (a) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the good shall conform to the affirmation or promise
  (b) A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
  (c) A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or mode.

M.C.L. § 440.2313(1). Plaintiff does not argue in his Response to General RV's Motion for Summary Judgment that General RV breached an express warranty. Additionally, the Court cannot locate any express warranties made by General RV. Therefore, the Court grants General RV's Motion for Summary Judgment on Plaintiff's express warranty claim.

### b. Implied Warranties

The Michigan UCC describes the implied warranty of merchantability:

(1) Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind

M.C.L. § 440.2314(1). The Michigan UCC also describes the implied warranty of fitness:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

M.C.L. § 440.2315.  As stated above, General RV did not properly disclaim its implied warranties.  Viewing the facts in a light most favorable to the non-moving party, General RV failed to properly disclaim its implied warranties and therefore cannot prevail on its summary judgment motion.  Accordingly, the Court denies General RV's Motion for Summary Judgment on Plaintiff's implied warranty claim.

### 3. **Revocation** (Count IV)

On the issue of revocation, Michigan's UCC states:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
   (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
   (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

M.C.L. § 440.2608.  "There is no clear Michigan precedent on whether a seller's disclaimer of all warranties bars revocation of a buyer."  *Ducharme*, 321 F. Supp.2d at 855.

> However, this issue has been addressed by commentators and courts in other jurisdictions analyzing statutes like M.C.L. § 440.2608, which are based also on U.C.C. § 2-608:
>
> > A determination of the existence or non-existence of a nonconformity requires reference to the terms of the contract, including the law of warranty . . . the courts do not look with favor on disclaimers that purport to disclaim responsibility for what the seller has in essence agreed to sell.  But if the only relevant language in the agreement as to quality has been effectively declaimed, no nonconformity in the goods sufficient for revocation can exist.  If the goods are sold 'as is,' comment 7 of 2-316 states the 'buyer takes the entire risk as to the

12

>  quality of the goods.'

*Id*. (quoting 1 James J. White & Robert S. Summer, Uniform Commercial Code § 8-4 (4th ed. 1995 & Supp. 2002) and citing Barkley Clark & Christopher Smith, *The Law of Product Warranties* p 7.03[4] (1984) ("Revocation is a remedy for breach of warranty, and when the seller effectively disclaims warranty liability, there is no longer a right for which revocation can serve as a remedy.").

Defendant argues that the revocation claim must fail because revocation is solely a remedy for breach of warranty and cannot be asserted because General RV disclaimed all express and implied warranties. Plaintiff responds that he may revoke acceptance of the defective motor home because the nonconformity substantially impaired the value to him. Alternatively, Plaintiff contends that if the court finds that a seller's disclaimer of all warranties bars revocation by a buyer, General RV did not effectively disclaim all implied warranties.

The Michigan Supreme Court addressed the issue of "substantial impairment" as applied to Mich. Comp. Law section 440.2608 in *Colonial Dodge, Inc v. Miller*, 420 Mich. 452 (1984). At issue in *Colonial Dodge* was whether a car that was missing a spare tire at the time of purchase substantially impaired the value of the car. The court held that "in order to give effect to [Mich. Comp. Law section 440.2608(1)], a buyer must show that the nonconformity has a special devaluing effect on him and that the buyer's assessment of it is factually correct." *Id*. at 458. The court found that a substantial impairment existed because the buyer had a safety concern associated with the need for a spare tire, as he traveled extensively for his job. *Id*. at 459. The buyer's concern with safety was further evidenced by the fact that he ordered special tires with his vehicle. *Id*. The court found that without a spare tire, the buyer could have been

stranded on the highway. *Id*. Under the circumstances, the court ruled that the failure to include a spare tire constituted a substantial impairment in the value to the buyer and he could revoke.[2] In the instant case, Plaintiff claims his substantial impairment is the fact that his motor home was out of service for 180 days. Though he believes the value of the motor home is substantially impaired to him, he fails to provide evidence that he is factually correct. Unlike *Dodge*, here there is no evidence that the defects were potentially dangerous or unsafe. Further, Plaintiff does not cite any cases on point to support his position that 180 non-consecutive days out of service is a substantial impairment.

Since the Court finds that there was not a substantial impairment, the Court must decide whether Plaintiff may still bring a revocation claim. In *Watson*, a case with the same defendant, General RV, and a similar disclaimer of warranties, the court found that the plaintiffs waived their right to revoke on the revocation issue that "[s]ince General [RV] effectively disclaimed all warranties in its Contract with Plaintiffs. . . ." *Watson*, 2002 WL 32059736, *7. *See also Pidcock*, 371 F. Supp. 2d at 881 ("In addition to disclaiming any warranties, [Dealer] also informed the [Plaintiffs] that revocation was not an option.").

Plaintiff again argues that the MVPA does not contain any express disclaimers of implied warranties meeting Mich. Comp. Law section 440.2316(2) requirements of conspicuousness. However, as stated above, the MVPA is a separate agreement and while it covers the financing

---

[2] In *Kelynack v. Yamaha Motor Corp,* 152 Mich. App. 105 (1986)*,* the court found that a tapping noise which resulted in an oil pump failing and required replacement of nearly every major component of the seriously damaged engine, constituted a substantial impairment. Contrast *Kelynack* with *Treadway v. Damon Corp*., 2004 WL 3372010 (E.D. Mich. Sept. 30, 2004) (Cleland, J.) (unpublished), which found that ongoing problems with the motor homes' bedroom slide-out "did not rise to the level of a failed engine which substantially impaired the value of the motor home." *Id*. at *13.

of the motor vehicle, it is not the operative document covering the sale. *See Pidcock*, 371 F. Supp.2d at 880-81. The Sales Agreement, on the other hand, was found to be inconspicuous. Therefore, the Court finds that Plaintiff's claim for revocation does not fail because General RV did not properly disclaim all warranties. Accordingly, the Court denies General RV's Motion for Summary Judgment on the Plaintiff's claim of revocation of acceptance.

### 4. **Violation of the Magnuson-Moss Warranty Act** (Count II)

Plaintiff's Magnuson-Moss Warranty Act ("MMWA") claim is actually two separate claims. The first is a claim for refund or replacement under section 2304(a) of the Act. The second is for breach of implied warranty under the Act.

#### a. *Section 2304(a)*

General RV argues that it is not a "warrantor" under the MMWA. General RV asserts that section 2304(a) of the Act does not apply to it because it did not provide any express written warranties. Though Plaintiff does not separate his MMWA express warranty claims and his MMWA implied warranty claims, Plaintiff appears to restate his earlier argument that the MVPA did not disclaim any express warranties and thus he has a claim under the Act. Plaintiff cites portions of the MMWA, but no authority, in support of his position.

The MMWA provides a private right of action for a consumer against a manufacturer who does not comply with its written or implied warranty. 15 U.S.C. § 2310. "Only to the extent that Magnuson-Moss is applicable to the sale of consumer goods does it supercede inconsistent provisions of the UCC." *Source v. Naperville Jeep Eagle*, 722 N.E.2d 227, 234 (Ill. App. 1999) (citing *Murphy v. Mallard Coach Co.*, 179 A.D.2d 187 (NY 1992)). Under the MMWA, a seller is not forced to give an express written warranty. *Ducharme*, 321 F. Supp. 2d

at 854. However, if a written warranty is offered, "it must comply with the standards set forth in the law." *Id*. (citing 59 A.L.R. Fed. 461). The MMWA provides in part that:

> [A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . .

15 U.S.C. § 2310(d)(1). If the written warranty it does not meet the requirement of the MMWA, then it must meet the requirements of the UCC. *Source*, 722 N.E.2d at 234.

In the instant case, General RV did not offer a written warranty under the MMWA. Therefore, the MMWA does not apply to General RV. Since the MMWA does not apply, the Court next looks to the Michigan UCC definition of express warranty. The UCC definition of express warranty does not help Plaintiff because General RV did not offer any type of express warranty. Accordingly, the Court grants General RV's Motion for Summary Judgment on Plaintiff's MMWA section 2304 claim.

                                 b.         *Implied Warranty*

General RV argues that because it has properly disclaimed all implied warranties, Plaintiff has failed to state a claim for breach of implied warranties under the MMWA. Plaintiff responds that General RV cannot waive the implied warranties of the sale by placing the words "as-is" in the sales documents nor with any other language under the MMWA.

Section 2301(7) of the Act defines an implied warranty as "an implied warranty arising under State law . . . ." "The MMWA "serves to supplement state-law implied warranties only by prohibiting their disclaimer in certain circumstances," specifically when "the supplier disclaims an implied warranty while either making a written warranty or entering into a service contract." *Rokicsak v. Colony Marine Sales & Serv., Inc.*, 219 F. Supp. 2d 810, 817-18 (E.D. Mich. 2002).

In the instant case, General RV failed to properly disclaim any implied warranties. As a result, there are implied warranties arising under state law. Accordingly, the Court grants General RV's Motion for Summary Judgment on Plaintiff's MMWA claim based on a breach of implied warranties.

### 5. Violation of the Michigan Consumer Protection Act (Count V)

General RV argues that Plaintiff's allegations are all warranty-based, and since General RV disclaimed all warranties, Plaintiff cannot succeed on his MCPA claim. Plaintiff responds that because he has valid claims for breach of implied warranties against General RV, he has stated a valid claim under the MCPA. Plaintiff also argues that General RV aided "the fraud and/or misrepresentation perpetrated against Plaintiff," in violation of the MCPA.

The majority of all MCPA claims involve charges of fraud. *Parsley v. Monaco Coach Corp*, 327 F. Supp. 2d 797, 807 (W.D. Mich. 2004). "It is proper to construe the provision of the MCPA 'with reference to the common-law tort of fraud.'" *Zine v. Chrysler Corp.*, 236 Mich. App. 261, 283 (1999). Furthermore, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Michels*, 298 F. Supp. 2d at 650 (citing FED. R. CIV. P. 9(b)). In addition to fraud, a breach of implied warranties also violates the MCPA. *Mikos v. Chrysler Corp*, 158 Mich. App. 781 (1987).

In the instant case, Plaintiff first alleges a violation of the MCPA by fraud when he states that "Defendant aided the fraud and/or misrepresentation perpetrated against Plaintiff." (Pl.'s Resp. 7).[3] However, he does not identify specific facts that violate the MCPA in his Complaint

---

[3] Plaintiff misnumbered the pages in his Response. All references to pages in Plaintiff's Response refer to the "corrected" page number.

or in his Brief.  Because fraud must be pled with specificity and Plaintiff did not identify specific facts that violated the MCPA, Plaintiff does not have a fraud claim under the MCPA.

In addition to fraud, a breach of implied warranty also violates the MCPA.  *Mikos*, 158 Mich. App. 781.  As stated above, General RV failed to properly disclaim all implied warranties.  Therefore, Plaintiff has a breach of implied warranties claim under the MCPA.

Further, Plaintiff argues that his Complaint contains MCPA claims independent of fraud and breach of warranty.  Plaintiff cites *Mayhall v. A.H. Pond Co.*, 129 Mich App. 178 (1983) to support his argument.   In *Mayhall*, the issue before the court was whether a plaintiff who suffers only frustrated expectations without also suffering a monetary loss has suffered a compensable loss under the MCPA.  The court ruled that "the great majority of the specific prohibited practices enumerated in the statute . . involve fraud."  *Id*. at 182.  However, the court held that "[t]he MCPA . . . has a somewhat broader scope.  It prohibits not only 'deceptive' business practices but also those which are 'unfair' and 'unconscionable.'"  *Id*.  Plaintiff further relies on *Peters v. Cars To Go, Inc.*, Case No. 97-CV-920, 1999 WL 33502378 (W.D. Mich. Mar. 17, 1999) (unpublished), which dealt with whether a Truth in Lending Act violation rose to the level of common law fraud.  *Id*.  The court, citing *Mayhall*, found that "[p]laintiffs need not prove fraud in order to show that Defendant violated the MCPA.  While the *Mayhall* court did find that the legal principle applicable to the common law tort of fraud may provide guidance in interpreting the MCPA, it also found that conduct not amounting to fraud may support a violation of the MCPA."  *Id*. at *2.   Thus, on the facts of the case, the *Cars* court found that the alleged Truth in Lending Act violations supported a claim of the MCPA, even though they did not rise to the level of common law fraud.  *Id*.

Though Plaintiff mainly relies on *Mayhall* and *Cars* to support that plaintiffs may bring a claim under the MCPA that does not rise to the level of common law fraud, those cases are not binding on this Court. Further, the only conduct Plaintiff pleads with specificity is that General RV's disclaimer of warranties could be confusing and that General RV failed to follow its Sales Agreement which "plainly promise[d] the benefit of repairs at no charge within the stated time and mileage parameters." (Pl.'s Resp. 11). Regarding the alleged confusing warranty disclaimer, the language cited in Plaintiff's brief is the language found in Gulf Stream's disclaimer - not the language found in General RV's - and therefore inapplicable. Likewise with Plaintiff's claim that General RV failed to provide promised benefits claim, General RV did not make the above promise anywhere in its Sales Agreement. Additionally, though Plaintiff asserts a claim under the MCPA independent of fraud or breach of implied warranty, there is not a single published opinion on point.

Accordingly, the Court denies General RV's Motion for Summary Judgment on Plaintiff's MCPA claim based upon a breach of implied warranty. The Court grants General RV's Motion for Summary Judgment on Plaintiff's MCPA claim to the extent it is based upon any claim other than a breach of implied warranty.

### 6. **Negligent Repair** (Count VI)

General RV argues that Plaintiff failed to allege a harm that was separate and distinct from the duties imposed by the contract at issue. Plaintiff concedes that he does not have a negligent repair claim against General RV. As a result, the Court grants General RV's Motion to Dismiss Plaintiff's negligent repair claim.

### III. CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion for Summary Judgment on: 1) Count I & III (breach of implied warranties); 2) Count IV (revocation ); 3) Count II to the extent it is based upon a breach of implied warranty (MMWA); and 4) Count V to the extent it is based upon a breach of implied warranty (MCPA).

The Court GRANTS Defendant's Motion for Summary Judgment on: 1) Count VII (breach of express warranty); 2) Count II to the extent it is based on an express written warranty (MMWA); 3) Count V to the extent it is based upon fraud and claims independent of fraud and breach of implied warranty (MCPA); 4) Count 6 (negligent repair).

**SO ORDERED.**


          s/Paul D. Borman  
          PAUL D. BORMAN  
          UNITED STATES DISTRICT JUDGE

Dated:  December 13, 2005

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on December 13, 2005.


          s/Jonie Parker  
          Case Manager