UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORY M. ZANGER,

        Plaintiff,

v.

GULF STREAM COACH, INC.,
a Foreign corporation, and
GENERAL R.V. CENTER, INC.,
a Michigan corporation,
GENERAL MOTORS CORPORATION,
a Delaware corporation, Jointly and Severally,

        Defendants.
_____/

Case Number: 05-72300

JUDGE PAUL D. BORMAN
UNITED STATES DISTRICT COURT

## OPINION AND ORDER GRANTING DEFENDANT GENERAL MOTOR'S MOTION FOR SUMMARY JUDGMENT

Now before the Court is Defendant General Motor's Motion for Summary Judgment. The Court held a motion hearing on April 12, 2006. Having considered the entire record, and for the reasons that follow, the Court GRANTS Defendant's Motion for Summary Judgment.

**I.    BACKGROUND**

The instant action was brought by Plaintiff Cory Zanger ("Plaintiff") on July 6, 2005, against Gulf Stream Coach, Inc. ("Gulf Stream"), General R.V. Center, Inc. ("General RV"), and General Motors Corporation ("GM") (collectively "Defendants") based on the alleged breaches of warranty, contract and violations of state and federal statutes.

This controversy revolves around Cory Zanger's purchase of a new 2004 Gulf Stream Endura recreational vehicle ("motor home" or "RV") from General RV. Plaintiff purchased the

motor home on June 24, 2004, with 888 miles on the odometer. GM manufactured the chassis of the motor home while Gulf Stream manufactured the coach and made the final assembly. Plaintiff signed General RV's Sales Agreement ("Sales Agreement") on June 17, 2004. The relevant section of the warranty provided:

> GM does not authorize any person to create for it any other obligation or liability in connection with these vehicles. **Any implied warranty of merchantability or fitness for a particular purpose applicable to this vehicle is limited in duration to the duration of this written warranty. Performance of repairs and needed adjustments is the exclusive remedy under the written warranty or any implied warranty.**
> **GM shall not be liable for incidental or consequential damages (such as, but not limited to, lost wages or vehicle rental expenses) resulting from breach of this written warranty or any implied warranty.**

(Def.'s Mot., Ex. 1) (emphasis in original)

After taking possession of the vehicle, Plaintiff experienced various problems with both the chassis and coach of the vehicle, and subsequently took the vehicle in for repairs. (Complaint, ¶11). The vehicle was unavailable to Plaintiff for an alleged period up to 180 days. (*Id*.).

Plaintiff brought the motor home to Ed Rinke Chevrolet for repair two times within two months of purchase date. (Pl.'s Resp. Ex. 3, Service Receipt). The motor home was first serviced from July 12 to July 20, 2004, because the engine continued to stall while driving and the cruise control was inoperable. (*Id*.). The motor home was again repaired for a stalling engine from July 27 to August 12, 2004. (*Id*.).

Plaintiff contends that Defendants were offered numerous attempts to cure these defects, but failed to do so. (*Id*. at ¶14). Plaintiff was not satisfied with the repairs that were made and notified Defendants that he desired to have them buy-back the vehicle. (*Id*. at ¶12-15).

Defendants refused to buy-back the vehicle, resulting in this suit.

On October 24, 2005, the Court dismissed Counts IV, VI and VII of the Complaint[1] in their entirety, as applied to GM.  Additionally, Count II was dismissed to the extent that it was based on a breach of express warranty, and Count V was dismissed to the extent it was based on fraud.  However, Counts I and III survived, as well as the remaining claims under Counts II and V.

On November 28, 2005, the Court granted Gulf Stream's Motion for Summary Judgment on all counts. Additionally, the Court granted in part and denied in part General RV's Motion for Summary Judgment on December 13, 2005.  GM brought the instant Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 on February 6, 2006.  Plaintiff filed his response on February 27, 2006 and GM replied on March 29, 2006.

GM argues that it did not have specific knowledge of Plaintiff's reasons for purchasing the vehicle, nor did Plaintiff rely on GM's expertise in selecting the vehicle.  GM asserts that Plaintiff did not provide it with reasonable notice of nonconformity until five months after Plaintiff filed his complaint.  GM claims that Plaintiff never presented the motor home for repair of the issues identified in his interrogatories.  GM contends that after an expert examined the vehicle for the nonconformity that Plaintiff alleges, only one minor problem was found and that problem could have been easily remedied by Plaintiff.

Plaintiff argues that the RV was in the shop a total of 180 days for engine, water pump, electrical and interior defects, among other issues.  Plaintiff claims that GM had notice of the

---

[1] Even though Plaintiff brought his claims against manufacturers GM and Gulf Stream, his Complaint only refers to a singular "manufacturer."  This creates confusion as to whether he is referring to GM or Gulf Stream, though Plaintiff contends he is referring to both Defendants.

defects due to the numerous times Plaintiff brought the motor home in for warranty repairs. Plaintiff also argues that the dealer, General RV, is an agent for GM.

### III. ANALYSIS

#### A. Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the non-moving party, there is no

genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.  Discussion**

The threshold issue before the Court is whether there is a genuine issue of material fact as to Plaintiff's breach of implied warranty claims. GM primarily argues that Plaintiff did not provide it with notice within a reasonable time after he discovered an alleged breach. GM claims that Plaintiff bought the vehicle on June 25, 2004 and filed suit on July 6, 2005. During Plaintiff's deposition on November 22, 2005, GM avers Plaintiff could not identify any ongoing non-conformities with the chassis. However, GM asserts that Plaintiff claimed four chassis problems on in his December 11, 2005 interrogatories, five months after Plaintiff filed his

Complaint.² GM contends that Plaintiff never presented the motor home for repair service with regard to the issues identified in Plaintiff's interrogatories. GM also argues that under Mich. Comp. Law section 440.2315, Plaintiff must prove that GM had specific knowledge regarding Plaintiff's motive for purchasing the vehicle and that Plaintiff relied on GM's expertise in selecting the vehicle. GM contends that Plaintiff cannot prove this.

Plaintiff responds that GM had proper notice because GM was aware of the chassis issues prior to his December 11, 2005 interrogatories. Plaintiff argues that the motor home was serviced three different times for chassis problems. Plaintiff asserts that the motor home was 1) serviced for engine defects before Plaintiff purchased it; 2) serviced a second time for engine and cruise control defects seventeen days after it was purchased; and 3) serviced again for engine problems seven days after the second service. Plaintiff also argues that General RV is GM's agent for purposes of the RV sale and repairs.

### 1.   Implied Warranty of Merchantability

Plaintiff's remaining claims against GM contend that it breached the implied warranty of merchantability by manufacturing a chassis that required it to be out-of-service for repair 180 days during the warranty period.

The implied warranty of merchantability states, in pertinent part, that "[u]nless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." M.C.L. § 440.2314(1). "[T]he warranty of merchantability warrants that the goods sold are of average quality within the

---

² Plaintiff's chassis concerns were: (1) the cruise control not working; (2) cigarette lighter not working; (3) burns oil; and (4) daytime headlights turn off. (Def.'s Br. Ex. 2, Zanger Interrog. ¶ 14).

industry." *Ambassador Steel Co. v. Ewald Steel Co.*, 33 Mich. App. 495, 501 (1971).

> To establish a prima facie case of breach of implied warranty, a plaintiff must show that goods were defective when they left the possession of the manufacturer or seller. Under implied warranty theory, a defect is established by proof that a product is not reasonably fit for its intended, anticipated or reasonably foreseeable use. Merchantable is not a synonym for perfect. . . . As to goods accepted, the burden is on the buyer to establish any claimed breach of warranty.

*Computer Networks v. AM General*, 265 Mich. App. 309, 316 (2005) (citing *Guaranteed Construction Co. v. Gold Bond Products*, 153 Mich. App. 385, 392093 (1986)). "Every sales contract governed by the U.C.C. includes an implied warranty of merchantability, unless it is effectively disclaimed." *Eaton Corp. v. Magnavox Co.*, 581 F. Supp. 1514, 1533 (1984) (citing MCL § 440.2314). Repairs must be made within a reasonable time, as the warrantor does not have an indefinite amount of time to fix the problem. 67A Am. Jur. 2d Sales, § 850; *see generally*, *Computer Networks*, *supra*, and *Kelynack v. Yamaha Motor Corp.*, 152 Mich. App. 105 (1986). A buyer who seeks to recover damages for a breach of implied warranty must provide notice to the seller within a reasonable time after he discovers the breach or the buyer cannot recover. MCL 440.2607(3)(a); *see also* MCL 440.2714.

      To rebut GM's contention that it was not put on notice, Plaintiff provided evidence that the motor home was serviced three different times within five months for engine problems. The first service was performed between February 2, 2004 until April 6, 2004.[3] (Pl.'s Resp. Ex. 2). The motor home was brought to Ed Rinke Chevrolet because the vehicle would lose power while driving and the engine would stall. The motor home had 648 miles on its odometer at the time. (*Id*.). This service was performed prior to Plaintiff's purchase of the motor home.

---

[3] It is unclear whether the motor home was repaired continuously during the two month span or whether it sat idle in the shop for part of that time.

The second time Ed Rinke Chevrolet performed service on the motor home was July 12, 2004 - just two weeks after Plaintiff purchased the RV. (Pl.'s Resp. Ex. 3, Service Receipt). The motor home was brought in for a second repair because the engine continued to stall while driving, and the cruise control was inoperable. (*Id*.). At the time of the second repair, the motor home had been driven 1,763 miles. (*Id*.). There is some discrepancy as to the completion date of the second repair, although it appears to be July 20, 2004. (*Id*.).

The motor home was serviced a third time because it continued to stall while in use. (Pl.'s Resp. Ex. 4). The motor vehicle was brought in for repair on July 27, 2004. (*Id*.). The mileage at the time of the third repair was 2657 miles. (*Id*.). It appears that the motor home was released to Plaintiff on August 12, 2004. (*Id*.).

In light of the motor home's service record, the Court does not find persuasive Defendant's argument that Plaintiff failed to place it on notice in regards to engine problems. Plaintiff's previous chassis problems were covered by warranty, as noted on the service invoices. (*See* Pl.'s Resp. Ex. 3, 4). These repairs occurred soon after Plaintiff's purchase of the motor home and should have placed GM on notice of the motor home's problems.

GM also argues that it did not breach its implied warranty by distinguishing the facts in the instant case from *Computer Network, Inc. v. AM General*, 265 Mich. App. 309 (2005). In *Computer Networks*, the plaintiff claimed that his leased vehicle had fourteen different problems requiring repair.[4] *Id*. at 311. The plaintiff also claimed that the vehicle was out-of-service for

---

[4] Those problems included: engine problems, starting problems, malfunctioning turn signals, power steering fluid leaks, excessive vibration, defective steering, malfunctioning gauges, defective air conditioning, odometer and speedometer malfunctions, defective heating, malfunctioning cruise control, inoperable CD player, excessive rust, and defective painting. *Id*. at 311.

repairs a total of 199 days during a thirty-month lease. *Id*. On the issue of implied warranty of merchantability, the court found that the manufacturer was not liable because it properly disclaimed any implied warranties. *Id*. at 316. However, the court held that the dealer was liable for breach of implied warranties. The court stated that "in view of the multiple repairs to the vehicle and the total days it was out of service, a genuine issue of material fact exists whether [the dealer] breached its implied warranty of merchantability."[5] *Id*. at 317.

Unlike GM's argument that Plaintiff's motor home never had repair service performed on it, the evidence provided by Plaintiff shows that the motor home was in the shop for repair approximately 90 days.[6] Although the original repair on the motor home is evidence that it had problems before it was sold to Plaintiff, only 25 days of that total time of service repair occurred after Plaintiff purchased the motor home. Still, the 25 days that the motor home was out of service due to problems is in contrast to the 199 days in *Computer Networks*.[7] Additionally, Plaintiff only brought the motor home in for repairs twice for engine problems and a cruise control malfunction, compared to the fourteen different chassis problems experienced by the plaintiff in *Computer Networks*.

Further, in his December 11, 2005 interrogatories, Plaintiff describes the current condition of the vehicle as "good," with 12,000 miles on it. (Def.'s Br. Ex. 2, Pl.'s Answer to

---

[5] The *Computer Network* court relied on *Int'l Fin. Servs. v. Franz*, 515 N.W.2d (Minn. App. 1994) where service on a circuit board needed service nineteen different times and was out of service for repairs sixteen to twenty-five percent of the nine-month period. Computer Network, 265 Mich. App. at 318. The Court in *Franz* found in favor of the plaintiff on the plaintiff's breach of implied warranty claims. *Id*.

[6] This is in contradiction to Plaintiff's claim of 180 days.

[7] *See also Jellison v. Fleetwood Enterprises, Inc.*, Case No. 03-71502, 2004 U.S. Dist. Lexis 28835 (E.D. Mich. Apr. 7, 2004) (J. Zatkoff) (unpublished).

Interrogatories).  In his interrogatories, Plaintiff identified four problems that needed repair as of December 11, 2005.  There was no mention of the stalling engine and malfunctioning cruise control as current problems.[8]  (*See Id.*).  To rebut Plaintiff's claims that there were additional chassis problems, Defendant submitted an affidavit of John McInally, a mechanical engineer who examined the vehicle.  McInally's affidavit stated that he found the cruise control and daytime headlights to be operating normally and could not locate evidence of the engine burning oil or an external oil leak.  (McInally Aff. ¶ 5, 6, 7, 8).  McInally found that the cigarette lighter did not work, but concluded that this was the result of a blown fuse, which is "simple and inexpensive" to replace.  (*Id.* at ¶ 9, 10).

Finally, according to Plaintiff's testimony, he does not claim to have incurred any damages.

> Q. Can you think of any out-of-pocket expenses you've incurred as a result of the problems you've had with the RV?
> A. I don't know.
> Q. Have you lost any wages as a result of the problems with the RV?
> A. No.
> Q. Have you suffered any type of emotional trauma?
> A. I don't think so.
> Q. Have you tried selling the RV?
> A. No.

---

[8] In fact, in Plaintiff's November 22, 2005 deposition, he could not remember the last time the motor home's engine stalled.  (Def.'s Br. Ex. 1, Zanger Dep. 32: 24-25).  Plaintiff also experienced no problems with his motor home when he drove it to McMillan in the Upper Peninsula for a hunting trip.
> Q. This trip you took on November 15th[, 2005] to McMillan.  Did you have any problems with starting the RV?
> A. I don't remember.
(Def.'s Reply, Ex. 2, Zanger Dep. 36: 16-18).

(Def.'s Reply Ex. 2, Zanger Dep. 36: 2-12)

To survive summary judgment, Plaintiff must present evidence which is not "merely colorable." Here, Plaintiff failed to provide significant probative evidence of his current problems. Moreover, Plaintiff did not allege or provide evidence of any additional service repairs on the chassis occurring after August 12, 2004. Therefore, the Court assumes, for purposes of this motion, that the motor home has not been out of service for repair since August 12, 2004, and that all previous problems not mentioned in Plaintiff's interrogatories have been corrected.

Consequently, even in a light most favorable to Plaintiff, the Court finds that he has not raised a genuine issue of material fact. Although Plaintiff's motor home could not be used for numerous days while being repaired, his inability to use the motor home during those days does not rise to the level of *Computer Network* and *Kelynack*. Plaintiff had a reasonable time to cure the nonconformity and did so. Plaintiff's motor home chassis was not perfect at the time of purchase, but has not needed corrective maintenance since August 12, 2004. Accordingly, the Court grants GM's Motion for Summary Judgment as to Plaintiff's breach of implied warranty of merchantability claim.

### 2. Implied Warranty of Fitness

The implied warranty of fitness, as codified in Mich. Comp. Law section 440.2315, states that:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods,

11

> there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

GM argues that Mich. Comp. Law section 440.231 requires Plaintiff to prove that GM had specific knowledge of Plaintiff's motive for purchasing the motor home.  GM contends that Plaintiff cannot prove that GM had specific knowledge regarding Plaintiff's motive.   GM further asserts that Plaintiff did not inform GM of his motive for purchasing the motor home, nor can he remember his own reason for choosing the motor home. Therefore, GM argues it is entitled to summary judgment.

The Court does not find GM's argument persuasive.  Plaintiff brought this suit alleging he was deprived use of his motor home for a unreasonable amount of time due to problems with the chassis.  Though Plaintiff did not inform GM or General RV of his particular purpose for the motor home, it should not have been a surprise to GM that Plaintiff wanted to use the motor home for transportation.

GM also argues that Plaintiff did not rely on GM's expertise when selecting the vehicle. In fact, GM claims that Plaintiff's Complaint establishes that GM was not the seller of the vehicle; therefore, Plaintiff did not deal directly with GM when buying the RV.  Plaintiff did not respond to this argument.

Contrary to what is required by Mich. Comp. Law section 440.2315, Plaintiff does not allege that he communicated to GM or General RV his reliance on their skill or expertise to select the motor home.  Further, just because the motor home experienced engine and cruise control problems does not mean that GM breached its implied warranty.

12

The chassis problems were not of a continuing nature, as there were no service repairs after August 12, 2004. Additionally, GM was able to fix the problems in a reasonable amount of time at no costs to Plaintiff. *See National Cash Register Co. v. Adell Industries, Inc.*, 57 Mich. App. 413 (1975). Accordingly, the Court grants GM's Motion for Summary Judgment as to Plaintiff's breach of implied warranty of fitness for a particular purpose.[9]

### 3. Magnuson-Moss Warrant Act ("MMWA")

#### a. *Implied Warranty*

GM argues that because there are no breach of the implied warranties, there cannot be a breach under the MMWA.

"The Magnuson-Moss Act is the federal statute that sets forth guidelines, procedures and requirements for warranties, written or implied, on consumer products." *Temple v. Fleetwood Enters.*, 133 Fed. Appx. 254, 268 (6th Cir. 2005). Section 2301(7) of the Act defines an implied warranty as "an implied warranty arising under State law . . . ." "Ultimately, the applicability of the Magnuson-Moss [Warranty] Act is directly

---

[9] It could be argued that there is a question of material fact as to whether the motor home was fit for the purpose of transportation, and that it failed to provide transportation. However, the evidence only shows that the motor home was out of service for 25 days and that under the warranty, it was able to be repaired. Without evidence of subsequent days out of service, the Court finds that judgment in favor of GM is proper because two repairs is not unreasonable.

dependant upon a sustainable claim for breach of warranty. Thus, if there exists no actionable warranty claim, there can be no violation of the Magnuson-Moss Act." *Temple*, 133 Fed. Appx. at 268.

As stated above, the Court finds that GM did not breach its implied warranties. Therefore, Plaintiff does not have a sustainable claim for breach of implied warranty, and thus, no claim under the MMWA. Accordingly, the Court grants GM's Motion for Summary Judgment on Plaintiff's MMWA claim based on a breach of implied warranties.

### 4. Violation of the Michigan Consumer Protection Act ("MCPA")

GM alleges that Plaintiff cannot assert a warranty-based violation of the MCPA because there was no breach of an implied warranty.

A breach of implied warranties violates the MCPA. *Mikos v. Chrysler Corp*, 158 Mich. App. 781 (1987). Since the Court finds that GM did not breach its implied warranties, Plaintiff does not have a cause of action under the MCPA. Therefore, the Court grants GM's Motion for Summary Judgment on Plaintiff's MCPA claim.

## IV. CONCLUSION

For the reasons stated, the Court GRANTS GM's Motion for Summary Judgment in its entirety.

**SO ORDERED.**

                                         s/Paul D. Borman  
                                         PAUL D. BORMAN  
                                         UNITED STATES DISTRICT JUDGE

**Dated: May 25, 2006**

### CERTIFICATE OF SERVICE

**Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on May 25, 2006.**

                                         s/Jonie Parker  
                                         **Case Manager**